**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARIUSZ BARAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| PARK INDUSTRIES, INC., HEXAGON AB, | ) | Case No.: |
| HEXAGON MANUFACTURING | ) | |
| INTELLIGENCE, INC., and MAGNETEK, | ) | JURY DEMANDED |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, MARIUSZ BARAN, by and through his attorneys, TAXMAN, POLLOCK, MURRAY & BEKKERMAN, and complaining against the Defendants, PARK INDUSTRIES, INC., HEXAGON AB, HEXAGON MANUFACTURING INTELLIGENCE, INC., and MAGNETEK, INC. states as follows:

### Parties and Jurisdiction

1. MARIUSZ BARAN is a citizen of Franklin Park, Illinois.

2. Defendant PARK INDUSTRIES, INC., (hereinafter "PARK INDUSTRIES") is a Minnesota corporation with its principal place of business in St. Cloud, Minnesota.

3. Defendant, HEXAGON AB is a Swedish corporation, with its principal place of business in Stockholm, Sweden.

4. Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., is a Delaware corporation with its principal place of business in North Kingstown, Rhode Island.

5. Defendant, MAGNETEK, INC., is a Delaware corporation with its principal place of business in Menomonee Falls, Wisconsin.

6. On September 8, 2022, Plaintiff, MARIUSZ BARAN was working at 10225 Pacific Avenue, in the Village of Franklin Park, County of Cook, State of Illinois.

7.     On September 8, 2022, Plaintiff MARIUSZ BARAN was employed and working as a laborer in granite countertop fabrication, at the aforementioned premises.

8.     On September 8, 2022, a large granite slab fell from a certain digital SABER CNC granite saw machine and landed on the Plaintiff's lower extremity causing severe and permanent injury. Upon information and belief, the subject granite slab weighed in excess of five-hundred pounds.

9.     The amount in controversy exceeds the value of $75,000.00.

10.    Diversity jurisdiction of this Court is invoked pursuant to 28 USC § 1332.

11.    Venue of this action properly lies in the Northern District of Illinois, pursuant to 28 USC § 1391(b), in that the events giving rise to this cause occurred within said judicial district.

## Count I – (Product Liability)
### MARIUSZ BARAN v. PARK INDUSTRIES, INC.,

NOW COMES the Plaintiff, MARIUSZ BARAN, by and through his attorneys, Taxman, Pollock, Murray & Bekkerman, LLC, and complaining of the Defendant, PARK INDUSTRIES, INC., a foreign corporation, states as follows:

1-11.   Plaintiff hereby incorporates Paragraphs One (1) through Eleven (11) of this Complaint at Law as if fully set forth herein Count I.

12.    At all times relevant and material, the Defendant, PARK INDUSTRIES, was a foreign corporation operating at 6301 Sauk View Drive, in St. Cloud, Minnesota.

13.    At all times relevant and material, the Defendant PARK INDUSTRIES, intentionally placed, installed, advertised, and sold products into/in the State of Illinois for use within the State of Illinois.

14.    With regard to the specific product at issue in this case, PARK INDUSTRIES, intentionally placed, installed, and sold the subject digital SABER CNC granite saw machine into Cook County, Illinois for use in Cook County, Illinois.

15.     On and before September 8, 2022, Defendant PARK INDUSTRIES sold a certain digital SABER CNC saw machine to Plaintiff's employer located at 10225 Pacific Avenue, in the Village of Franklin Park, County of Cook, State of Illinois.

16.     On and before September 8, 2022, Defendant PARK INDUSTRIES delivered and installed the aforementioned digital SABER CNC saw machine to/at the 10225 Pacific Avenue, Franklin Park, Illinois facility.

17.     On and before September 8, 2022, Defendant PARK INDUSTRIES engaged in the business of designing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, installing and/or placing for sale certain hardware and machinery for use in the granite cutting and fabrication industry, including but not limited to the subject digital SABER CNC saw machine.

18.     On and before September 8, 2022, Defendant PARK INDUSTRIES, designed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, installed, sold and/or placed for sale a digital SABER CNC saw machine and its parts for use at 10225 Pacific Avenue, Franklin Park, Illinois.

19.     On and before September 8, 2022, Defendant PARK INDUSTRIES knew or should have known the nature of the business performed at the premises, including raising the saw machine's platform, table, and/or tilt table for placement and removal of granite slabs both prior and subsequent to cutting said granite.

20.     On and before September 8, 2022, Defendant PARK INDUSTRIES, knew or should have known that the subject saw would be used to cut, support, and bear the weight of large and heavy slabs of granite or other heavy countertop materials, cut at various angles and grades, both in the lowered "parked" position and with the platform or tilt table rotated and elevated in the "load and unload" position.

21.     On and before September 8, 2022, Defendant PARK INDUSTRIES, knew or should have known that the process of granite countertop fabrication, in which the digital SABER CNC saw machine participated, deemed it highly likely the saw would bear the weight, hold, and/or secure large and heavy granite slabs both prior and subsequent to being cut.

22.     On and before September 8, 2022, Defendant, PARK INDUSTRIES, knew or should have known that the process of granite countertop fabrication, in which the digital SABER CNC saw machine participated, deemed it highly likely the granite would be wet, or nearby other machinery and hardware in operation and/or use.

23.     On and before September 8, 2022, Defendant PARK INDUSTRIES participated in designing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, installing, selling and/or placing for sale the digital SABER CNC saw machine and its parts while said product and/or parts were in an unreasonably dangerous condition with regard to its acknowledged intended and foreseeable uses, and was so at the time the subject aforesaid digital SABER CNC saw machine and/or its parts left the control of the manufacturer, in that:

    a.     The digital SABER CNC saw machine was unreasonably dangerous in design due to the high degree of risk that the product would malfunction or fail to operate as intended at the premises;

    b.     The digital SABER CNC saw machine was unreasonably dangerous in design because the load and position stakes, or slab stops, were inadequate support for the subject granite slab and inadequate to support the weight, grade and angle of cuts made by said saw;

    c.     The digital SABER CNC saw machine was unreasonably dangerous in design because the load and position stakes, or slab stops, were too short to support the subject granite slab;

    d.     The digital SABER CNC saw machine was unreasonably dangerous in design because the material of the load and position stakes, or slab stops, was inadequate to bear the weight and friction necessary to support the subject granite slab;

    e.     The digital SABER CNC saw machine was unreasonably dangerous in design because the load and position stakes, or slab stops, allowed for only one "load position" which was too short to support the weight of the subject granite slab;

f.      The digital SABER CNC saw machine was unreasonably dangerous in design in that it allowed users to make a 45-degree cut on the edge of the granite which would then be rested on the position stakes, or slab stops, for loading and unloading;

g.      The digital SABER CNC saw machine was unreasonably dangerous in design in that the wood top material of the tilt-table was too tall or thick, allowing granite material resting on top to fall from the position stakes or slab stops;

h.      The digital SABER CNC saw machine was unreasonably dangerous due to the manufacturing defects that created a propensity to malfunction or fail to operate as intended at the premises;

i.      The digital SABER CNC saw machine was unreasonably dangerous in that the Defendant failed to warn consumers or users of the dangerous condition of said product in that it had an inability to support granite with a 45-degree cut on the resting edge;

j.      The digital SABER CNC saw machine was unreasonably dangerous in that the Defendant failed to warn consumers or users of the dangerous condition of said product in that it failed to secure and/or prevent granite from falling off the position stakes or slab stops;

k.      The digital SABER CNC saw machine was unreasonably dangerous in its propensity to malfunction or fail to operate as intended at the premises; and/or

l.      Was otherwise unreasonably dangerous.

24.     On and before September 8, 2022, the digital SABER CNC saw machine designed, prepared, manufactured, maintained, provided, advertised, distributed, installed, supplied, sold and/or placed into sale by Defendant PARK INDUSTRIES, was in use at the subject premises, but malfunctioned, failed to operate as intended, and/or failed to secure, hold, and/or bear the weight of the subject granite slab.

25.     That as a direct and proximate result of one or more of the aforementioned unreasonably dangerous conditions of said product and/or its parts, the Plaintiff, MARIUSZ BARAN, sustained severe and debilitating injuries of a personal and pecuniary nature. The Plaintiff was caused to be injured, thereby he sustained severe and permanent injuries, both

5

externally and internally, and was, and will be, hindered and prevented from attending to his usual duties, occupation as a laborer in granite fabrication, and his affairs and has lost, and will in the future lose, the value of that time as aforementioned. The Plaintiff also suffered great pain and anguish; both in mind and body and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed of said injuries.

WHEREFORE, the Plaintiff, MARIUSZ BARAN, demands judgment against the Defendant, PARK INDUSTRIES, in an amount in excess of $75,000.00 plus costs of suit.

### Count II– (Negligence)
### BARAN v. PARK INDUSTRIES

NOW COMES the Plaintiff, MARIUSZ BARAN, by and through his attorneys, Taxman, Pollock, Murray & Bekkerman, LLC, and complaining of the Defendant, PARK INDUSTRIES, INC., a foreign corporation, states as follows:

1-11. Plaintiff hereby incorporates Paragraphs One (1) through Eleven (11) of this Complaint at Law as if fully set forth herein Count II.

12. At all times relevant and material, the Defendant, PARK INDUSTRIES, was a foreign corporation operating at 6301 Sauk View Drive, in St. Cloud, Minnesota.

13. At all times relevant and material, the Defendant PARK INDUSTRIES, intentionally placed, installed, advertised, and sold products into/in the State of Illinois for use within the State of Illinois.

14. With regard to the specific product at issue in this case, PARK INDUSTRIES, intentionally placed, installed, and sold the subject digital SABER CNC granite saw machine into Cook County, Illinois for use in Cook County, Illinois.

15. On and before September 8, 2022, Defendant PARK INDUSTRIES sold a certain digital SABER CNC saw machine to Plaintiff's employer located at 10225 Pacific Avenue, in the Village of Franklin Park, County of Cook, State of Illinois.

16.     On and before September 8, 2022, Defendant PARK INDUSTRIES delivered and installed the aforementioned digital SABER CNC saw machine to/at the 10225 Pacific Avenue, Franklin Park, Illinois facility.

17.     On and before September 8, 2022, Defendant PARK INDUSTRIES engaged in the business of designing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, installing and/or placing for sale certain hardware and machinery for use in the granite cutting and fabrication industry, including but not limited to the subject digital SABER CNC saw machine.

18.     On and before September 8, 2022, Defendant PARK INDUSTRIES, designed, prepared, manufactured, maintained, provided, advertised, distributed, supplied, installed, sold and/or placed for sale a digital SABER CNC saw machine and its parts for use at 10225 Pacific Avenue, Franklin Park, Illinois.

19.     On and before September 8, 2022, Defendant PARK INDUSTRIES knew or should have known the nature of the business performed at the premises, including raising the saw machine's platform, table, and/or tilt table for placement and removal of granite slabs both prior and subsequent to cutting said granite.

20.     On and before September 8, 2022, Defendant PARK INDUSTRIES, knew or should have known that the subject saw would be used to cut, support, and bear the weight of large and heavy slabs of granite or other heavy countertop materials, cut at various angles and grades, both in the lowered "parked" position and with the platform or tilt table rotated and elevated in the "load and unload" position.

21.     On and before September 8, 2022, Defendant PARK INDUSTRIES, knew or should have known that the process of granite countertop fabrication, in which the digital SABER CNC saw machine participated, deemed it highly likely the saw would bear the weight, hold, and/or secure large and heavy granite slabs both prior and subsequent to being cut.

7

22.     On and before September 8, 2022, Defendant, PARK INDUSTRIES, knew or should have known that the process of granite countertop fabrication, in which the digital SABER CNC saw machine participated, deemed it highly likely the granite would be wet, or nearby other machinery and hardware in operation and/or use.

23.     On and before September 8, 2022, Defendant, PARK INDUSTRIES, had a duty to use ordinary care in the design, preparation, manufacture, advertising, distribution, supply, installation, training/ instruction upon, and sale of the digital SABER CNC saw machine such that the same would be safe for use.

24.     Despite the aforementioned duty, Defendant PARK INDUSTRIES was then and there negligent in one or more of the following ways, by and through their respective employees, agents, and/or apparent agents, in that it:

a.     Failed to make reasonable inspection of the digital SABER CNC saw machine when the product was in its possession and when the Defendant knew, or in the exercise of ordinary care should have known, that said inspection was necessary to prevent injury to the Plaintiff;

b.     Negligently and improperly manufactured, maintained, repaired, installed and/or modified said digital SABER CNC saw machine along with its component parts, when the digital SABER CNC saw machine was in its possession and when the Defendant had a duty to keep the product in a safe condition;

c.     Negligently failed to test and/or discover the defective condition of the digital SABER CNC saw machine and its component parts and their propensity to malfunction or fail to operate in the intended manner, namely failures to hold, secure and/or bear the weight of cut granite;

d.     Negligently failed to train potential users and/or the owner(s) of the subject digital SABER CNC saw machine, on the proper weight requirements, load bearing requirements, cut angulation restrictions, and limitations of said machine in holding, securing, and/or bearing the weight of cut granite;

e.     Negligently provided inadequate training regarding the safety risks associated with the subject digital SABER CNC saw machine's ability to hold, secure, and/or bear the weight of cut granite while in the load/unload position;

f.  Negligently failed to build the subject digital SABER CNC saw machine with adequate support to safely hold large cut granite slabs in the load/unload position;

g.  Negligently failed to give warnings concerning the dangerous propensities of said product and/or the likelihood of serious injury occurring in the event of a malfunction;

h.  Negligently failed to warn of the potential for granite falling from the machine's tilt table while in the load/unload position;

i.  Negligently and carelessly provided inadequate safety warnings and instructions regarding the product's weight bearing capabilities, loading and unloading procedures, and its propensity to malfunction or fail to hold, secure, or bear the weight of cut granite;

j.  Negligently installed the subject digital SABER CNC saw machine in an unsafe manner such that the dimensions of the position stakes, cutting or tilt-table, and/or tabletop were inadequate for safe unloading;

k.  The product was misrepresented to the Plaintiff, and the general public, that the product in question was safe for use by the public and was safe to support, hold and/or bear the weight of all cut granite slabs; and/or

l.  Was otherwise careless or negligent.

25.  On and before September 8, 2022, the digital SABER CNC saw machine designed, prepared, manufactured, maintained, installed, provided, advertised, distributed, supplied, sold and/or placed into sale by Defendant PARK INDUSTRIES was in use at the premises, but malfunctioned or failed to operate as intended on the premises, and/or failed to hold, bear, or secure the weight of a large cut granite slab.

26.  That as a direct and proximate cause of one or more of the aforementioned unreasonably dangerous conditions of said product and/or its parts, and/or the aforementioned negligence of the Defendant PARK INDUSTRIES, the Plaintiff, MARIUSZ BARAN, sustained severe and debilitating injuries of a personal and pecuniary nature. The Plaintiff was caused to be injured, thereby he sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to his usual duties, occupation as a laborer

in granite fabrication, and his affairs and has lost, and will in the future lose, the value of that time as aforementioned. The Plaintiff also suffered great pain and anguish; both in mind and body and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed of said injuries.

WHEREFORE, the Plaintiff, MARIUSZ BARAN, demands judgment against the Defendant, PARK INDUSTRIES, in an amount in excess of $75,000.00 plus costs of suit.

### Count III – (Product Liability)
### MARIUSZ BARAN v. HEXAGON AB

NOW COMES the Plaintiff, MARIUSZ BARAN, by and through his attorneys, Taxman, Pollock, Murray & Bekkerman, LLC, and complaining of the Defendant, HEXAGON AB, a foreign corporation, states as follows:

1-11. Plaintiff hereby incorporates Paragraphs One (1) through Eleven (11) of this Complaint at Law as if fully set forth herein Count III.

12. At all times relevant and material, the Defendant, HEXAGON AB, was a foreign corporation operating in Illinois with multiple branches in Illinois and an office in Elgin, Illinois.

13. At all times relevant and material, the Defendant, HEXAGON AB, intentionally placed, installed, manufactured, advertised, and sold products and software into the stream of commerce.

14. With regard to the specific product at issue in this case, HEXAGON AB, intentionally placed, installed, manufactured, and sold a certain ALPHACAM software into the stream of commerce, and into the state of Illinois.

15. On and before September 8, 2022, Defendant HEXAGON AB sold, installed, and/or designed a certain ALPHACAM software to/for PARK INDUSTRIES for use in the subject digital SABER CNC saw.

16.     On and before September 8, 2022, Defendant HEXAGON AB's aforementioned ALPHACAM software was in use and operation within the SABER CNC saw machine, at the 10225 Pacific Avenue, premises in the Village of Franklin Park, County of Cook, State of Illinois.

17.     On and before September 8, 2022, Defendant HEXAGON AB engaged in the business of designing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, installing and/or placing for sale and into the stream of commerce certain software systems for use in the granite cutting and countertop fabrication industry, including but not limited to said ALPHACAM software.

18.     On and before September 8, 2022, Defendant HEXAGON AB knew or should have known the nature of the business performed at the premises, including raising the saw machine's platform, table, and/or tilt table for placement and removal of granite slabs both prior and subsequent to cutting said granite.

19.     On and before September 8, 2022, Defendant HEXAGON AB, knew or should have known that the subject ALPHACAM software would control the SABER CNC digital saw used to cut, support, and bear the weight of large and heavy slabs of granite or other heavy countertop materials, both in the lowered "parked" position and with the platform or tilt table rotated and elevated in the "load and unload" position.

20.     On and before September 8, 2022, Defendant, HEXAGON AB, knew or should have known that the process of granite countertop fabrication, in which the ALPHACAM software participated, deemed it highly likely that the SABER CNC digital saw would bear the weight of large heavy granite slabs both prior and subsequent to being cut.

21.     On and before September 8, 2022, Defendant, HEXAGON AB, knew or should have known that the process of granite countertop fabrication, in which the ALPHACAM software participated, deemed it highly likely the granite would be wet, or nearby other machinery and hardware in operation and/or use.

22.     On and before September 8, 2022, Defendant HEXAGON AB participated in designing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, installing, selling and/or placing for sale the ALPHACAM software within the SABER CNC saw while said product was in an unreasonably dangerous condition with regard to its acknowledged intended and foreseeable uses, and was so at the time the subject aforesaid ALPHACAM software left the control of the manufacturer, in that:

a.      The ALPHACAM software within the SABER CNC saw was unreasonably dangerous in design due to the high degree of risk that the product would malfunction or fail to operate as intended at the premises;

b.      The ALPHACAM software was unreasonably dangerous in design because the software failed to warn users that cutting material at a 45-degree angle or with a 45-degree edge could result in heavy materials falling from the cutting table/tilt table;

c.      The ALPHACAM software was unreasonably dangerous in design in that it functionally allowed users to make a 45-degree cut on the granite edge that would then rest on the position stakes or slab stops for loading and unloading;

d.      The ALPHACAM software was unreasonably dangerous in design in that it allowed users to elevate the tilt-table after making an angled cut on the edge of granite that would rest on the position stakes;

e.      The ALPHACAM software was unreasonably dangerous due to the manufacturing defects that created a propensity to malfunction or fail to operate as intended at the premises;

f.      The ALPHACAM software was unreasonably dangerous in that it failed to warn users of the dangerous condition of the SABER CNC saw machine in that it had a propensity to malfunction or fail to operate as intended at the premises;

g.      The ALPHACAM software was unreasonably dangerous due to its failure to provide users with a safety warning, pop-up, click through, or other alert/notification of the dangers of cutting at certain angles and then raising the cutting/ tilt table to the load and unload position;

h.      The ALPHACAM software was unreasonably dangerous in design because it allowed the user to cut granite then rotate the table to an unsafe angle;

i.      The ALPHACAM software was unreasonably dangerous in design because it failed to include a stop, sensor, or kill switch that activates when cutting

at unsafe angles/ or when elevating the tilt table to an unsafe degree after an angled cut;

j.    Was otherwise unreasonably dangerous.

23.    On and before September 8, 2022, the ALPHACAM software designed, prepared, manufactured, maintained, provided, advertised, distributed, installed, supplied, sold and/or placed into sale by Defendant HEXAGON AB, was in use at the subject premises, but malfunctioned, failed to operate as intended, failed to prevent users from cutting materials at a 45-degree angle on the resting edge, and/or failed to warn, and failed to prevent materials from lifting off/ falling from the table on the subject premises.

24.    That as a direct and proximate result of one or more of the aforementioned unreasonably dangerous conditions of said product and/or its parts, the Plaintiff, MARIUSZ BARAN, sustained severe and debilitating injuries of a personal and pecuniary nature. The Plaintiff was caused to be injured, thereby he sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to his usual duties, occupation as a laborer in granite fabrication, and his affairs and has lost, and will in the future lose, the value of that time as aforementioned. The Plaintiff also suffered great pain and anguish; both in mind and body and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed of said injuries.

WHEREFORE, the Plaintiff, MARIUSZ BARAN, demands judgment against the Defendant, HEXAGON AB, in an amount in excess of $75,000.00 plus costs of suit.

## Count IV– (Negligence)
### MARIUSZ BARAN v. HEXAGON AB

NOW COMES the Plaintiff, MARIUSZ BARAN, by and through his attorneys, Taxman, Pollock, Murray & Bekkerman, LLC, and complaining of the Defendant, HEXAGON AB, a foreign corporation, states as follows:

1-11.    Plaintiff hereby incorporates Paragraphs One (1) through Eleven (11) of this Complaint at Law as if fully set forth herein Count IV.

12.    At all times relevant and material, the Defendant, HEXAGON AB, was a foreign corporation operating in Illinois, with multiple branches in Illinois and an office in Elgin, Illinois.

13.    At all times relevant and material, the Defendant, HEXAGON AB, intentionally placed, installed, manufactured, advertised, and sold products an software into the stream of commerce.

14.    With regard to the specific product at issue in this case, HEXAGON AB, intentionally placed, installed, manufactured, and sold a certain ALPHACAM software into the stream of commerce, and into the state of Illinois.

15.    On and before September 8, 2022, Defendant HEXAGON AB sold, installed, and/or designed a certain ALPHACAM software to/for PARK INDUSTRIES for use in the subject digital SABER CNC saw.

16.    On and before September 8, 2022, Defendant HEXAGON AB's aforementioned ALPHACAM software was in use and operation within the SABER CNC saw machine, at the 10225 Pacific Avenue, premises in the Village of Franklin Park, County of Cook, State of Illinois.

17.    On and before September 8, 2022, Defendant HEXAGON AB engaged in the business of designing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, installing and/or placing for sale and into the stream of commerce certain software systems for use in the granite cutting and countertop fabrication industry, including but not limited to said ALPHACAM software.

18.    On and before September 8, 2022, Defendant HEXAGON AB knew or should have known the nature of the business performed at the premises, including raising the saw machine's platform, table, and/or tilt table for placement and removal of granite slabs both prior and subsequent to cutting said granite.

14

19.     On and before September 8, 2022, Defendant HEXAGON AB, knew or should have known that the subject ALPHACAM software would control the SABER CNC digital saw used to cut, support, and bear the weight of large and heavy slabs of granite or other heavy countertop materials, both in the lowered "parked" position and with the platform or tilt table rotated and elevated in the "load and unload" position.

20.     On and before September 8, 2022, Defendant, HEXAGON AB, knew or should have known that the process of granite countertop fabrication, in which the ALPHACAM software participated, deemed it highly likely that the SABER CNC digital saw would bear the weight of large heavy granite slabs both prior and subsequent to being cut.

21.     On and before September 8, 2022, Defendant, HEXAGON AB, knew or should have known that the process of granite countertop fabrication, in which the ALPHACAM software participated, deemed it highly likely the granite would be wet, or nearby other machinery and hardware in operation and/or use.

22.     On and before September 8, 2022, Defendant, HEXAGON AB, had a duty to use ordinary care in the design, preparation, manufacture, advertising, distribution, supply, installation, training/ instruction upon, and sale of the ALPHACAM software such that the SABER CNC saw powered by the ALPHACAM software would be safe for use.

23.     Despite the aforementioned duty, Defendant HEXAGON AB was then and there negligent in one or more of the following ways, by and through their respective employees, agents, and/or apparent agents, in that it:

  a. Failed to make a reasonable inspection of the ALPHACAM software in use within the digital SABER CNC saw machine when the Defendant knew, or in the exercise of ordinary care should have known, that said inspection was necessary to prevent injury to the Plaintiff;

  b. Negligently and improperly maintained, repaired, installed and/or modified said ALPHACAM software, when the ALPHACAM software was in its possession when the Defendant had a duty to keep the product in a safe condition;

c.  Negligently failed to discover the defective condition of the ALPHACAM software system in use within the digital SABER CNC saw and its propensity to allow the saw to malfunction or fail to operate in the intended manner;

d.  Negligently failed warn or to give adequate warnings concerning the dangerous propensities of the ALPHACAM software system in use within the digital SABER CNC saw and/or the likelihood of serious injury occurring in the event of a malfunction;

e.  Programmed the unsafe function of an angled cut and subsequent elevation of the tilt/ cutting table;

f.  Was otherwise careless or negligent.

24. On and before September 8, 2022, the ALPHACAM software designed, prepared, manufactured, maintained, installed, provided, advertised, distributed, supplied, sold and/or placed into sale by Defendant HEXAGON AB was in use within the SABER CNC saw at the subject premises, but malfunctioned or failed to operate as intended on the premises, and/or failed to prevent users from cutting granite and elevating the table in an unsafe manner.

25. That as a direct and proximate cause of one or more of the aforementioned unreasonably dangerous conditions of said product and/or its parts, and/or the aforementioned negligence of the Defendant HEXAGON AB, the Plaintiff, MARIUSZ BARAN, sustained severe and debilitating injuries of a personal and pecuniary nature. The Plaintiff was caused to be injured, thereby he sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to his usual duties, occupation as a laborer in granite fabrication, and his affairs and has lost, and will in the future lose, the value of that time as aforementioned. The Plaintiff also suffered great pain and anguish; both in mind and body and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed of said injuries.

WHEREFORE, the Plaintiff, MARIUSZ BARAN, demands judgment against the Defendant, HEXAGON AB, in an amount in excess of $75,000.00 plus costs of suit

**Count V – (Product Liability)**
**MARIUSZ BARAN v. HEXAGON MANUFACTURING INTELLIGENCE, INC.**

NOW COMES the Plaintiff, MARIUSZ BARAN, by and through his attorneys, Taxman, Pollock, Murray & Bekkerman, LLC, and complaining of the Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., a foreign corporation, states as follows:

1-11.   Plaintiff hereby incorporates Paragraphs One (1) through Eleven (11) of this Complaint at Law as if fully set forth herein Count V.

12.    At all times relevant and material, the Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., was a foreign corporation with an office in Elgin, Illinois.

13.    At all times relevant and material, the Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., intentionally placed, installed, manufactured, advertised, and sold products and software into the stream of commerce.

14.    With regard to the specific product at issue in this case, HEXAGON MANUFACTURING INTELLIGENCE, INC. intentionally placed, installed, manufactured, and sold a certain ALPHACAM software into the stream of commerce, and into the state of Illinois.

15.    On and before September 8, 2022, Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., sold, installed, and/or designed a certain ALPHACAM software to/for PARK INDUSTRIES for use in the digital SABER CNC saw.

16.    On and before September 8, 2022, Defendant HEXAGON MANUFACTURING INTELLIGENCE, INC.'s aforementioned ALPHACAM software was in use and operation within the SABER CNC saw machine at the 10225 Pacific Avenue, premises in the Village of Franklin Park, County of Cook, State of Illinois.

17.     On and before September 8, 2022, Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., engaged in the business of designing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, installing and/or placing for sale certain software systems for use in the granite cutting and countertop fabrication industry, including but not limited to ALPHACAM software.

18.     On and before September 8, 2022, Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., knew or should have known the nature of the business performed at the premises, including raising the saw machine's platform, table, and/or tilt table for placement and removal of granite slabs both prior and subsequent to cutting said granite.

19.     On and before September 8, 2022, Defendant HEXAGON MANUFACTURING INTELLIGENCE, INC., knew or should have known that the subject software would control the SABER CNC saw used to cut, support, hold and bear the weight of large and heavy slabs of granite or other heavy countertop materials, both in the lowered "parked" position and with the platform or tilt table rotated and elevated in the "load and unload" position.

20.     On and before September 8, 2022, Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., knew or should have known that the process of granite countertop fabrication, in which the ALPHACAM software participated, deemed it highly likely that the saw would bear the weight of the subject granite slabs both prior and subsequent to being cut.

21.     On and before September 8, 2022, Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., knew or should have known that the process of granite countertop fabrication, in which the ALPHACAM software participated, deemed it highly likely the granite would be wet, or nearby other machinery and hardware in operation and/or use

22.     On and before September 8, 2022, Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., participated in designing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, installing, selling and/or placing for sale the

ALPHACAM software within the SABER CNC saw while said product was in an unreasonably

dangerous condition with regard to its acknowledged intended and foreseeable uses, and was so at

the time the subject aforesaid ALPHACAM software left the control of the manufacturer, in that:

a. The ALPHACAM software within the SABER CNC saw was unreasonably dangerous in design due to the high degree of risk that the product would malfunction or fail to operate as intended at the premises;

b. The ALPHACAM software was unreasonably dangerous in design because the software failed to warn users that cutting material at a 45-degree angle or with a 45-degree edge could result in heavy materials falling from the cutting table/tilt table;

c. The ALPHACAM software was unreasonably dangerous in design in that it functionally allowed users to make a 45-degree cut on the granite edge that would then rest on the position stakes or slab stops for loading and unloading;

d. The ALPHACAM software was unreasonably dangerous in design in that it allowed users to elevate the tilt-table after making an angled cut on the edge of granite that would rest on the position stakes;

e. The ALPHACAM software was unreasonably dangerous due to the manufacturing defects that created a propensity to malfunction or fail to operate as intended at the premises;

f. The ALPHACAM software was unreasonably dangerous in that it failed to warn users of the dangerous condition of the SABER CNC saw machine in that it had a propensity to malfunction or fail to operate as intended at the premises;

g. The ALPHACAM software was unreasonably dangerous due to its failure to provide users with a safety warning, pop-up, click through, or other alert/notification of the dangers of cutting at certain angles and then raising the cutting/ tilt table to the load and unload position;

h. The ALPHACAM software was unreasonably dangerous in design because it allowed the user to cut granite then rotate the table to an unsafe angle;

i. The ALPHACAM software was unreasonably dangerous in design because it failed to include a stop, sensor, or kill switch that activates when cutting at unsafe angles/ or when elevating the tilt table to an unsafe degree after an angled cut;

j. Was otherwise unreasonably dangerous.

23.     On and before September 8, 2022, the ALPHACAM software designed, prepared, manufactured, maintained, provided, advertised, distributed, installed, supplied, sold and/or placed into sale by Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., was in use at the subject premises, but malfunctioned, failed to operate as intended, failed to prevent users from cutting materials at a 45-degree angle on the resting edge, and/or failed warn, and failed to prevent materials from lifting off/ falling from the table on the subject premises.

24.     That as a direct and proximate result of one or more of the aforementioned unreasonably dangerous conditions of said product and/or its parts, the Plaintiff, MARIUSZ BARAN, sustained severe and debilitating injuries of a personal and pecuniary nature. The Plaintiff was caused to be injured, thereby he sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to his usual duties, occupation as a laborer in granite fabrication, and his affairs and has lost, and will in the future lose, the value of that time as aforementioned. The Plaintiff also suffered great pain and anguish; both in mind and body and will in the future continue to suffer.  Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed of said injuries.

WHEREFORE, the Plaintiff, MARIUSZ BARAN, demands judgment against the Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., in an amount in excess of $75,000.00 plus costs of suit.

### Count VI– (Negligence)
### MARIUSZ BARAN v. HEXAGON MANUFACTURING INTELLIGENCE, INC.

NOW COMES the Plaintiff, MARIUSZ BARAN, by and through his attorneys, Taxman, Pollock, Murray & Bekkerman, LLC, and complaining of the Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., a foreign corporation, states as follows:

1-11.   Plaintiff hereby incorporates Paragraphs One (1) through Eleven (11) of this Complaint at Law as if fully set forth herein Count VI.

12. At all times relevant and material, the Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., was a foreign corporation with an office in Elgin, Illinois.

13. At all times relevant and material, the Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., intentionally placed, installed, manufactured, advertised, and sold products and software into the stream of commerce.

14. With regard to the specific product at issue in this case, HEXAGON MANUFACTURING INTELLIGENCE, INC. intentionally placed, installed, manufactured, and sold a certain ALPHACAM software into the stream of commerce, and into the state of Illinois.

15. On and before September 8, 2022, Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., sold, installed, and/or designed a certain ALPHACAM software to/for PARK INDUSTRIES for use in the digital SABER CNC saw.

16. On and before September 8, 2022, Defendant HEXAGON MANUFACTURING INTELLIGENCE, INC.'s aforementioned ALPHACAM software was in use and operation within the SABER CNC saw machine at the 10225 Pacific Avenue, premises in the Village of Franklin Park, County of Cook, State of Illinois.

17. On and before September 8, 2022, Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., engaged in the business of designing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, installing and/or placing for sale certain software systems for use in the granite cutting and countertop fabrication industry, including but not limited to ALPHACAM software.

18. On and before September 8, 2022, Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., knew or should have known the nature of the business performed at the premises, including raising the saw machine's platform, table, and/or tilt table for placement and removal of granite slabs both prior and subsequent to cutting said granite.

21

19.     On and before September 8, 2022, Defendant HEXAGON MANUFACTURING INTELLIGENCE, INC., knew or should have known that the subject software would control the SABER CNC saw used to cut, support, hold and bear the weight of large and heavy slabs of granite or other heavy countertop materials, both in the lowered "parked" position and with the platform or tilt table rotated and elevated in the "load and unload" position.

20.     On and before September 8, 2022, Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., knew or should have known that the process of granite countertop fabrication, in which the ALPHACAM software participated, deemed it highly likely that the saw would bear the weight of the subject granite slabs both prior and subsequent to being cut.

21.     On and before September 8, 2022, Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., knew or should have known that the process of granite countertop fabrication, in which the ALPHACAM software participated, deemed it highly likely the granite would be wet, or nearby other machinery and hardware in operation and/or use

22.     On and before September 8, 2022, Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., had a duty to use ordinary care in the design, preparation, manufacture, advertising, distribution, supply, installation, training/ instruction upon, and sale of the ALPHACAM software such that the SABER CNC saw powered by the ALPHACAM software would be safe for use.

23.     Despite the aforementioned duty, Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., was then and there negligent in one or more of the following ways, by and through their respective employees, agents, and/or apparent agents, in that it:

a.      Failed to make a reasonable inspection of the ALPHACAM software in use within the digital SABER CNC saw machine when the Defendant knew, or in the exercise of ordinary care should have known, that said inspection was necessary to prevent injury to the Plaintiff;

b.      Negligently and improperly maintained, repaired, installed and/or modified said ALPHACAM software, when the ALPHACAM software was in its

possession when the Defendant had a duty to keep the product in a safe condition;

c.      Negligently failed to discover the defective condition of the ALPHACAM software system in use within the digital SABER CNC saw and its propensity to allow the saw to malfunction or fail to operate in the intended manner;

d.      Negligently failed warn or to give adequate warnings concerning the dangerous propensities of the ALPHACAM software system in use within the digital SABER CNC saw and/or the likelihood of serious injury occurring in the event of a malfunction;

e.      Programmed the unsafe function of an angled cut and subsequent elevation of the tilt/ cutting table;

f.      Was otherwise careless or negligent.

24.     On and before September 8, 2022, the ALPHACAM software designed, prepared, manufactured, maintained, installed, provided, advertised, distributed, supplied, sold and/or placed into sale by Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., was in use within the SABER CNC saw at the subject premises, but malfunctioned or failed to operate as intended on the premises, and/or failed to prevent users from cutting granite and elevating the table in an unsafe manner.

25.     That as a direct and proximate cause of one or more of the aforementioned unreasonably dangerous conditions of said product and/or its parts, and/or the aforementioned negligence of the Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., the Plaintiff, MARIUSZ BARAN, sustained severe and debilitating injuries of a personal and pecuniary nature. The Plaintiff was caused to be injured, thereby he sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to his usual duties, occupation as a laborer in granite fabrication, and his affairs and has lost, and will in the future lose, the value of that time as aforementioned. The Plaintiff also suffered great pain and anguish; both in mind and body and will in the future continue to

suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed of said injuries.

WHEREFORE, the Plaintiff, MARIUSZ BARAN, demands judgment against the Defendant, HEXAGON MANUFACTURING INTELLIGENCE, INC., in an amount in excess of $75,000.00 plus costs of suit.

**Count VII– (Products Liability)**
**MARIUSZ BARAN v. MAGNETEK, INC.**

NOW COMES the Plaintiff, MARIUSZ BARAN, by and through his attorneys, Taxman, Pollock, Murray & Bekkerman, LLC, and complaining of the Defendant, MAGNETEK, INC., a foreign corporation, states as follows:

1-11.   Plaintiff hereby incorporates Paragraphs One (1) through Eleven (11) of this Complaint at Law as if fully set forth herein Count VII.

12.   At all times relevant and material, the Defendant, MAGNETEK INC., intentionally placed, installed, manufactured, advertised, and sold products into the stream of commerce, and into the State of Illinois.

13.   With regard to the specific product at issue in this case, MAGNETEK INC. intentionally placed, installed, manufactured, and sold a certain FLEX EM TRANSMITTER into the stream of commerce, and into the State of Illinois.

14.    On and before September 8, 2022, Defendant, MAGNETEK INC., sold, designed, fabricated, installed or otherwise produced a certain FLEX EM TRANSMITTER to/for PARK INDUSTRIES for use with the SABER CNC digital saw.

15.   On and before September 8, 2022, Defendant MAGNETEK INC.'s aforementioned FLEX EM TRANSMITTER was in use at the 10225 Pacific Avenue, premises in the Village of Franklin Park, County of Cook, State of Illinois.

16.   On and before September 8, 2022, Defendant, MAGNETEK INC., engaged in the business of designing, preparing, manufacturing, maintaining, providing, advertising, distributing,

supplying, selling, installing and/or placing for sale certain transmitters for use in the granite cutting and fabrication industry, including but not limited to the FLEX EM TRANSMITTER.

17.     On and before September 8, 2022, Defendant, MAGNETEK INC., knew or should have known the nature of the business performed at the premises, including raising the saw machine's platform, table, and/or tilt table for placement and removal of granite slabs both prior and subsequent to cutting said granite.

18.     On and before September 8, 2022, Defendant, MAGNETEK INC., knew or should have known that the subject transmitter would be used to control the digital SABER CNC saw used for cutting and fabricating granite countertops.

19.     On and before September 8, 2022, Defendant, MAGNETEK INC., knew or should have known that the process of granite countertop fabrication, in which the FLEX EM TRANSMITTER participated, deemed it highly likely that the SABER CNC digital saw would bear the weight, hold, and secure large heavy granite slabs both prior and subsequent to being cut.

20.     On and before September 8, 2022, Defendant, MAGNETEK INC., participated in designing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, installing, selling and/or placing for sale the FLEX EM TRANSMITTER for use in tandem with the SABER CNC saw, while said product and/or parts were in an unreasonably dangerous condition with regard to its acknowledged intended and foreseeable uses, and was so at the time the subject aforesaid FLEX EM TRANSMITTER left the control of the manufacturer, in that:

    a.    The FLEX EM TRANSMITTER used within the SABER CNC saw was unreasonably dangerous in design due to the high degree of risk that the product would malfunction or fail to operate as intended;

    b.    The FLEX EM TRANSMITTER was unreasonably dangerous in design because the transmitter failed to prevent users from cutting material at a 45-degree angle and/or with an angled edge which could result in heavy materials lifting off of or falling from the cutting table;

    c.    The FLEX EM TRANSMITTER was unreasonably dangerous in design in that it allowed users to make a 45-degree cut on the edge of the granite that

would then be rested on position stakes, or slab stops, for loading and unloading;

d.    The FLEX EM TRANSMITTER was unreasonably dangerous due to the manufacturing defects that created a propensity to malfunction or fail to operate as intended;

e.    The FLEX EM TRANSMITTER was unreasonably dangerous in that it failed to warn consumers or users of the dangerous condition of said SABER CNC product in that it had a propensity to malfunction or fail to operate as intended at the premises;

f.    The FLEX EM TRANSMITTER was unreasonably dangerous in its propensity to malfunction or fail to operate as intended at the premises; or

g.    The FLEX EM TRANSMITTER was unreasonably dangerous due to its failure to provide users with a safety warning, alert, or other notification of the dangers of cutting at certain angles and elevating the tilt or cutting table;

h.    The FLEX EM TRANSMITTER was unreasonably dangerous in design because it allowed the SABER CNC digital saw to perform cuts at unsafe angles and then to raise the tilt table/cutting table to an unsafe degree after said cut;

i.    Was otherwise unreasonably dangerous.

21.    On and before September 8, 2022, the FLEX EM TRANSMITTER designed, prepared, manufactured, maintained, provided, advertised, distributed, installed, supplied, sold and/or placed into sale by Defendant, MAGNETEK INC., was in use in tandem with the SABER CNC saw at the subject premises, but malfunctioned, failed to operate as intended, failed to prevent users from cutting materials at a 45-degree angle on the resting edge, and/or failed to prevent materials from lifting off of or falling from the tilt/ cutting table on the subject premises.

22.    That as a direct and proximate result of one or more of the aforementioned unreasonably dangerous conditions of said product and/or its parts, the Plaintiff, MARIUSZ BARAN, sustained severe and debilitating injuries of a personal and pecuniary nature. The Plaintiff was caused to be injured, thereby he sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to his usual duties, occupation as a laborer in granite fabrication, and his affairs and has lost, and will in the

future lose, the value of that time as aforementioned. The Plaintiff also suffered great pain and anguish; both in mind and body and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed of said injuries.

WHEREFORE, the Plaintiff, MARIUSZ BARAN, demands judgment against the Defendant, MAGNETEK INC., in an amount in excess of $75,000.00 plus costs of suit.

## Count VIII– (Negligence)
### MARIUSZ BARAN v. MAGNETEK INC.

NOW COMES the Plaintiff, MARIUSZ BARAN, by and through his attorneys, Taxman, Pollock, Murray & Bekkerman, LLC, and complaining of the Defendant, MAGNETEK INC., a foreign corporation, states as follows:

1-11. Plaintiff hereby incorporates Paragraphs One (1) through Eleven (11) of this Complaint at Law as if fully set forth herein Count VIII.

12. At all times relevant and material, the Defendant, MAGNETEK INC., intentionally placed, installed, manufactured, advertised, and sold products into the stream of commerce, and into the State of Illinois.

13. With regard to the specific product at issue in this case, MAGNETEK INC. intentionally placed, installed, manufactured, and sold a certain FLEX EM TRANSMITTER into the stream of commerce, and into the State of Illinois.

14. On and before September 8, 2022, Defendant, MAGNETEK INC., sold, designed, fabricated, installed or otherwise produced a certain FLEX EM TRANSMITTER to/for PARK INDUSTRIES for use with the SABER CNC digital saw.

15. On and before September 8, 2022, Defendant MAGNETEK INC.'s aforementioned FLEX EM TRANSMITTER was in use at the 10225 Pacific Avenue, premises in the Village of Franklin Park, County of Cook, State of Illinois.

27

16.     On and before September 8, 2022, Defendant, MAGNETEK INC., engaged in the business of designing, preparing, manufacturing, maintaining, providing, advertising, distributing, supplying, selling, installing and/or placing for sale certain transmitters for use in the granite cutting and fabrication industry, including but not limited to the FLEX EM TRANSMITTER.

17.     On and before September 8, 2022, Defendant, MAGNETEK INC., knew or should have known the nature of the business performed at the premises, including raising the saw machine's platform, table, and/or tilt table for placement and removal of granite slabs both prior and subsequent to cutting said granite.

18.     On and before September 8, 2022, Defendant, MAGNETEK INC., knew or should have known that the subject transmitter would be used to control the digital SABER CNC saw used for cutting and fabricating granite countertops.

19.     On and before September 8, 2022, Defendant, MAGNETEK INC., knew or should have known that the process of granite countertop fabrication, in which the FLEX EM TRANSMITTER participated, deemed it highly likely that the SABER CNC digital saw would bear the weight, hold, and secure large heavy granite slabs both prior and subsequent to being cut.

20.     On and before September 8, 2022, Defendant, MAGNETEK INC., had a duty to use ordinary care in the design, preparation, manufacture, advertising, distribution, supply, installation, training/ instruction upon, and sale of the FLEX EM TRANSMITTER such that the SABER CNC saw controlled by the FLEX EM TRANSMITTER would be safe for use.

21.     Despite the aforementioned duty, Defendant, MAGNETEK INC., was then and there negligent in one or more of the following ways, by and through their respective employees, agents, and/or apparent agents, in that it:

a.      Failed to make reasonable inspection of the FLEX EM TRANSMITTER in use with the digital SABER CNC saw machine when the Defendant knew, or in the exercise of ordinary care should have known, that said inspection was necessary to prevent injury to the Plaintiff; or

      b.      Negligently and improperly maintained, repaired, installed and/or modified said FLEX EM TRANSMITTER, when the FLEX EM TRANSMITTER was in its possession when the Defendant had a duty to keep the product in a safe condition; or

      c.      Negligently failed to discover the defective condition of the FLEX EM TRANSMITTER in use with the digital SABER CNC saw machine and its propensity to malfunction or fail to operate in the intended manner; or

      d.      Negligently provided inadequate training or instruction regarding the safety risks associated with the subject FLEX EM TRANSMITTER in use with the SABER CNC saw machine in its commands to cut at certain angles and/or control the lift table;

      e.      Negligently failed to give adequate warnings concerning the dangerous propensities of the FLEX EM TRANSMITTER in use with the digital SABER CNC saw and/or the likelihood of serious injury occurring in the event of a malfunction; or

      f.      Was otherwise careless or negligent.

22.     On and before September 8, 2022, the FLEX EM TRANSMITTER designed, prepared, manufactured, maintained, installed, provided, advertised, distributed, supplied, sold and/or placed into sale by Defendant, MAGNETEK INC., was in use with the SABER CNC saw at the subject premises, but malfunctioned or failed to operate as intended on the premises, and/or failed to prevent users from cutting granite and elevating the table in an unsafe manner.

23.     That as a direct and proximate cause of one or more of the aforementioned unreasonably dangerous conditions of said product and/or its parts, and/or the aforementioned negligence of the Defendant, MAGNETEK INC., the Plaintiff, MARIUSZ BARAN, sustained severe and debilitating injuries of a personal and pecuniary nature. The Plaintiff was caused to be injured, thereby he sustained severe and permanent injuries, both externally and internally, and was, and will be, hindered and prevented from attending to his usual duties, occupation as a laborer in granite fabrication, and his affairs and has lost, and will in the future lose, the value of that time as aforementioned. The Plaintiff also suffered great pain and anguish; both in mind and body and will in the future continue to suffer. Plaintiff further expended and became liable for, and will

expend and become liable for, large sums of money for medical care and services endeavoring to

become healed of said injuries.

WHEREFORE, the Plaintiff, MARIUSZ BARAN, demands judgment against the

Defendant, MAGNETEK INC., in an amount in excess of $75,000.00 plus costs of suit.

Respectfully submitted,
TAXMAN, POLLOCK, MURRAY & BEKKERMAN

By: _____
Attorney for Plaintiff

Sean P. Murray ARDC No. 6275575
Cameron J. Tober ARDC No. 6333466
TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC
225 West Wacker Drive, Suite 1650
Chicago, Illinois 60606
P: 312-586-1700
F: 312-586-1701
E: smurray@tpmblegal.com
E: ctober@tpmblegal.com